IBRQDELc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    UNITED STATES OF AMERICA

4              v.                        18 CR 802 (CM)
                                         Conference
     PEDRO VICIOSO DeLIMA, VICTOR
5    HIDALGO, DAVID PEREZ, JACINTO
     GARCIA, SIXTO VANCAMPER-BRITO,
6    CESAR GIL, JUAN GIL CABRAL,
     ANTHONY BELLIARD, MAYRA
7    MONSANTO, RICKY ROSA, MINERVA
     VENTURA, MARK VIERA, ROMEO
8    SUNCAR, ANTHONIO YERIS ALMONTE

9              Defendants
     ------------------------------x
10
                                         New York, N.Y.
11                                       November 27, 2018
                                         4:15 p.m.
12

13   Before:

14                 HON. COLLEEN MCMAHON
                                    District Judge
15

16                    APPEARANCES

17   GEOFFREY S. BERMAN
          United States Attorney for the
18        Southern District of New York
     DOMINIC A. GENTILE
19   ALINE FLODR
          Assistant United States Attorney
20

21   ANTHONY L. RICCO
          Attorney for DeLima
22
     SAM SCHMIDT
23        Attorney for Defendant Hidalgo

24   KEN WOMBLE
          Attorney for Defendant J. Garcia
25

IBRQDELc

1    APPEARANCES CONTINUED:

2    KARLOFF COMMISSIONG
          Attorney for Defendant Vancamper-Brito
3
     JOHN ZACH
4         Attorney for Defendant C. Gil

5    MICHAEL SPORN
          Attorney for Defendant Cabral
6

7    LAW OFFICE OF PETER BRILL
          Attorney for Defendant Belliard
8    MARK GUTMAN

9    CESAR de CASTRO
          Attorney for Defendant Monsanto
10

11   EDWARD SAPONE
          Attorney for Defendant R. Rosa
12

13   SUSAN KELLMAN
          Attorney for Defendant Ventura
14

15   LAW OFFICE OF ANTHONY CECUTTI
          Attorney for Defendant Viera
16   KEN WOMBLE

17   JESSE SIEGEL
          Attorney for Defendant Suncar
18

19   LISA SCOLARI
          Attorney for Defendant Almonte
20
     -Also Present-
21   DAVID MINTZ, Interpreter (Spanish)

22

23

24

25

IBRQDELc

```
 1              (Case called)
 2              DEPUTY CLERK:  Counsel, your appearances and who you
 3    represent.
 4              MS. FLODR:  Good afternoon, your Honor.  Aline Flodr
 5    and Dominic Gentile on behalf of the United States.
 6              THE COURT:  Good afternoon.
 7              MR. SCHMIDT:  Good afternoon, your Honor.
 8              Sam Schmidt on behalf of Victor Hidalgo, who is seated
 9    in the wheelchair next to me.
10              THE COURT:  Mr. Schmidt.
11              MS. SCOLARI:  Good afternoon, your Honor.  Lisa
12    Scolari for Antonio Almonte in the jury box.
13              THE COURT:  Ms. Scolari.
14              MS. KELLMAN:  Susan Kellman for Minerva Ventura seated
15    in the last row.
16              THE COURT:  Ms. Kellman.
17              MR. ZACH:  John Zach for Cesar Gil, who is third over
18    in the second row in the jury box.
19              THE COURT:  Mr. Zach.
20              MR. SIEGEL:  Jesse Siegel for Romeo Suncar who is --
21    he is waving at you.
22              THE COURT:  Mr. Siegel and Mr. Suncar, good afternoon
23    to you both.
24              MR. SAPONE:  Edward Sapone for Ricky Rosa, first row,
25    first seat.
```

IBRQDELc

1              MR. GUTMAN:  Mark Gutman standing in for attorney of

2     record Peter Brill for Anthony Belliard in the first row.

3              THE COURT:  Mr. Gutman.

4              MR. WOMBLE:  Kenneth Womble for Jacinto Garcia, the

5     second closest to you in the first row.

6              And, additionally, I'm standing in for Anthony Cecutti

7     for Mr. Viera, who is next to Mr. Garcia in the first row.

8              THE COURT:  Mr. Womble.

9              MR. SPORN:  Michael Sporn for Juan Gil Cabral in the

10    jury box second from the end.

11             THE COURT:  Mr. Sporn.

12             MR. de CASTRO:  Cesar de Castro for Mayra Monsanto

13    seated in the first row of the audience.

14             THE COURT:  Mr. de Castro.

15             MR. RICCO:  Good afternoon, your Honor.

16             Anthony Ricco for Pedro Vicioso DeLima, who is seated

17    all the way to the right in the second row.

18             THE COURT:  Mr. Ricco.

19             MR. COMMISSIONG:  Good afternoon, your Honor.  Karloff

20    Commissiong for Mr. Sixto Vancamper-Brito in the second row

21    closest to your Honor.

22             THE COURT:  Mr. Commissiong.

23             Well, hello everyone, literally.

24             OK, I do know a little about this case because I had a

25    bail app for one of the defendants, but since everyone is here,

IBRQDELc

1  can we put on the record what this case is about?

2              MS. FLODR:  Yes, your Honor.  As alleged in the

3  indictment, all of the defendants in this case were

4  participating in a drug-trafficking organization that operated

5  principally out of a building in Washington Heights, 501 West

6  167th Street.  As alleged in the indictment, this was a

7  conspiracy that spanned from July 2016 through on or about

8  October 2018.  During the course of the conspiracy, the

9  drug-trafficking organization we allege trafficked over

10  85 kilograms of heroin through this drug-trafficking building

11  and the surrounding environment, and much of that was laced

12  with fentanyl.

13              Comes as no surprise that this DTO had a hierarchy.

14  At the top of the hierarchy is the same person who sits at the

15  top of the indictment; that would be Pedro Vicioso DeLima.

16              He had a second in command, and that would be Mr.

17  Victor Hidalgo, the second person listed on the indictment.

18              Underneath those two were a series of managers.

19              Underneath the managers were the pitchers, who

20  participated in the hand-to-hand transactions that occurred in

21  the drug building.

22              In addition to having the actual distributors of the

23  heroin, there were also lookouts as well as doormen that

24  controlled complete access to the building.

25              The one outstanding person on this indictment who

IBRQDELc

```
 1    wasn't either a doorman or a lookout is Mr. Antonio Yeris
 2    Almonte, who served as the superintendent of the building
 3    itself, and he facilitated the DTO's complete access to the
 4    building and also helped inform the DTO members as to who was
 5    entering the building as well as giving them full access to
 6    parts of the building that other residents would not normally
 7    have access to.
 8            In addition to the amount of heroin that this
 9    drug-trafficking organization was responsible for, some of that
10    heroin ended up being associated with several fatal and
11    non-fatal overdoses during the course of this conspiracy.  At
12    all of those overdose incidents, there were glassines found
13    with the drug-trafficking organization stamps of choice for the
14    period of time.
15            One of those examples is listed in the indictment.
16    That was March 29 of 2018 where at a fatal overdose site there
17    were glassines marked with the stamps Ras Baraka and Porsche,
18    and there was also a slip of paper with the name and phone
19    number of one of the defendants in this case.
20            All of the defendants were charged by an indictment
21    with a single count of conspiracy, and that was turned up by
22    the grand jury on October 31, 2018.  Most of the defendants
23    were arrested either on November 7 or November 8, and most of
24    them were arraigned before Magistrate Judge Lehrburger on
25    November 8 of 2018.
```

IBRQDELc

1          Cesar Gil and Ricky Rosa were subsequently writted and

2     arrested and arraigned on November 14, and time has been

3     excluded off the speedy trial clock from each of those

4     arraignments until today.

5          THE COURT:  OK.  So having heard that, what are we

6     talking about in terms of discovery that the government needs

7     to produce.

8          MS. FLODR:  Your Honor, the discovery in this case is

9     voluminous.  There were nine wires.  There are over 6,800

10     pertinent calls across those wires, and at least 200 hours of

11     pertinent calls.  Most of those pertinent calls are in Spanish.

12          There were also premises search warrants that were

13     conducted, as well as the results of those premises search

14     warrants.  GPS warrants on several of the defendants' phones

15     there were several triggerfish that were received in this case,

16     car tracking warrants, and the government is also planning on

17     completing phone search warrants for several phones seized on

18     the day of the takedown.

19          In addition to the bulk of that evidence, there is

20     evidence of over 25 controlled buys surveillance videos of some

21     of activities at the drug building.

22          THE COURT:  How much surveillance video?

23          MS. FLODR:  Your Honor, I don't have a specific number

24     for that, but I do -- it spans --

25          THE COURT:  That's the pertinent datum right now.  How

IBRQDELc

1    much surveillance video are we talking about?  Are we talking

2    about terabytes of surveillance video?

3              MS. FLODR:  No, your Honor, it's not terabytes.  I

4    would say it's in the -- probably at least 50 gigabytes of

5    surveillance video.

6              THE COURT:  Most of which will be of no relevance

7    whatsoever, but that's not very helpful to the defendants.

8              MS. KELLMAN:  Keeps us busy.

9              THE COURT:  It does, Ms. Kellman, I agree.

10             MS. FLODR:  And then the last, I guess, large bit of

11   evidence would be subpoena returns from phone companies,

12   financial institutions and other business enterprises.

13             THE COURT:  So what are we going to do about producing

14   discovery?

15             MS. FLODR:  Your Honor, we have been in contact with

16   defense counsel about a protective order.  It is almost fully

17   signed at this point.  We expect to hand that up to your Honor

18   at some point with -- or submit it to your Honor for

19   consideration within the week.  And we expect to produce the

20   bulk of the T3 related evidence by Monday, as soon as that

21   protective order is in place.

22             MR. de CASTRO:  Judge, if --

23             THE COURT:  Mr. de Castro.  Don't interrupt.  Do me a

24   favor.  I will let you talk.  I will let you address anything

25   you want, and you have to be at a mike but not now.  Let her

IBRQDELc

1    finish.

2            MR. de CASTRO:  It was on this topic.

3            THE COURT:  It may be on this topic, but it's not your

4    turn.  We run this kind of like kindergarten.  We take our

5    turns.

6            MS. FLODR:  And, your Honor, we believe we can produce

7    the substantial majority of all of the discovery, Rule 16

8    discovery in this case within four weeks.

9            THE COURT:  Now, is Mr. de Castro speaking for the

10   group?  Or is Mr. de Castro speaking for his client?  What's

11   the --

12           MS. KELLMAN:  For the group, your Honor.

13           THE COURT:  Thank you.

14           Mr. de Castro, good afternoon.

15           MR. de CASTRO:  Good afternoon.  Thank you, your

16   Honor.

17           So the government had indicated to us that they needed

18   about a terabyte from each defense counsel in order to produce

19   the discovery.  We discussed with them, and, of course, we want

20   to make a formal application if the Court is amenable to it for

21   a discovery coordinator I think.

22           THE COURT:  Sounds like a great idea.

23           MR. de CASTRO:  I need to see if Ms. Greenwood is

24   available or the other discovery coordinators we've worked with

25   are available for the appointment.  I will do that this week.

IBRQDELc

| | |
|---|---|
| 1 | THE COURT:  Fear not, I will so order that. |
| 2 | MR. de CASTRO:  In terms of if the Court wants to |
| 3 | discuss dates. |
| 4 | THE COURT:  I'll discuss anything you guys want. |
| 5 | MR. de CASTRO:  So obviously we don't have the |
| 6 | material, but the government has -- that's a lot of work. |
| 7 | THE COURT:  It's a lot of stuff. |
| 8 | MR. de CASTRO:  So we were thinking of a three-month |
| 9 | date, so we could come back to you and talk to you about where |
| 10 | we all are. |
| 11 | THE COURT:  That's what I was thinking too.  We have |
| 12 | been together for 20 years now.  We almost always think alike. |
| 13 | So what we're talking about is the last week in |
| 14 | February, Mr. O'Neill? |
| 15 | DEPUTY CLERK:  Tuesday, the 26th, 4:00. |
| 16 | THE COURT:  Are we picking a jury that day? |
| 17 | DEPUTY CLERK:  We are. |
| 18 | THE COURT:  Can we not do it that day? |
| 19 | DEPUTY CLERK:  The 27th, or what's the Monday?  Is it |
| 20 | a holiday? |
| 21 | THE COURT:  Monday is the day I get back.  We could do |
| 22 | it on Monday.  I could do it on Monday, but I can't pick a jury |
| 23 | on Monday. |
| 24 | DEPUTY CLERK:  Let's do it the 28th, Thursday, at |
| 25 | 4:00. |

IBRQDELc

```
 1                THE COURT:  Let's do it at 4:30 because I will be on
 2        trial.  And I assume everybody wants me to exclude time?
 3                Time is excluded in the interest of the justice and
 4        with the consent of defendants, their interest in a speedy
 5        trial being outweighed by the need for the government to
 6        produce discovery and defense counsel to figure out how to get
 7        it reviewed.  I will sign the protective order.  I will sign an
 8        order appointing discovery coordinator for this case.  OK?
 9                Who else has something interesting to say today?
10                MS. KELLMAN:  Judge, just a question in terms of bail
11        applications.  Does the Court want them made directly to you or
12        to the magistrate?
13                THE COURT:  You know, you may as well make them to me
14        because they're going to get to me anyway if you aren't happy
15        with what the magistrate says.
16                MS. KELLMAN:  Thank you, Judge.
17                THE COURT:  You could talk to Mr. Sapone; he's already
18        done one.  Anybody else?  Such silence.  Well, we are just
19        beginning.  We are just beginning.  I rather imagine I will
20        hear a lot more from you.  So I will see you all in February.
21        Thank you very much.
22                (Adjourned)
23
24
25
```